Jonathan H. Feinberg
Attorney I.D. No. 01376-2001 (NJ)
KAIRYS, RUDOVSKY, MESSING & FEINBERG LLP
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA  19106
(215) 925-4400
(215) 925-5365 (fax)
jfeinberg@krlawphila.com
*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **HERIBERTO AVALOS-PALMA,** | **No. _____** |
| **Plaintiff,** | |
| v. | **COMPLAINT AND JURY DEMAND** |
| **UNITED STATES OF AMERICA; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT OFFICER JOHN DOE(S),** | |
| **Defendants** | |

**PRELIMINARY STATEMENT**

1.  Plaintiff Heriberto Avalos-Palma was deported from the United States to his native Guatemala in violation of a stay of deportation, which was both mandatory and automatic under clearly established law.  As a result of his unlawful deportation, plaintiff was separated from his two minor U.S. citizen children for 42 months causing him to suffer serious injuries. Plaintiff additionally lost his full-time employment in the United States causing him to suffer substantial financial loss.

2. This action is brought under the Federal Tort Claims Act and the United States Constitution pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this Complaint under the Fourth and Fifth Amendments to the United States Constitution and 28 U.S.C. §§ 1331, 1346(b).

4. On March 22, 2013, an Administrative Tort Claim was submitted by plaintiff to the U.S. Department of Homeland Security. The claim was denied on August 13, 2013.

5. Venue is proper in this district under 28 U.S.C. § 1402(b) as plaintiff resides in Trenton, New Jersey and under 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

6. Plaintiff Heriberto Avalos-Palma, who is 42 years old, is and was at all times relevant to this Complaint a resident of Trenton, New Jersey.

7. Defendant United States of America is the appropriate defendant under the Federal Tort Claims Act.

8. Defendant John Doe(s) (hereinafter "Doe defendants") are and were at all times relevant to this Complaint officers employed by U.S. Immigration and Customs Enforcement ("ICE"), an agency of the United States of America, who were involved in the removal of plaintiff from the United States. The Doe defendants are sued in their individual capacities under fictitious names because their true identities are unknown to plaintiff at this time. When plaintiff ascertains the identity of the Doe defendants, he will amend this Complaint accordingly.

9. At all times relevant to this Complaint, the Doe defendants were acting within the scope and course of their employment with ICE.

10. At all times relevant to this Complaint, the Doe defendants were acting as investigative or law enforcement officers.

11. At all times relevant to this Complaint, the Doe defendants acted in concert and conspiracy and were jointly and severally responsible for the harms caused to plaintiff.

## FACTUAL ALLEGATIONS

12. Plaintiff Heriberto Avalos-Palma was born in Guatemala in 1970.

13. On or about April 14, 1991, when plaintiff was 20-years-old, he entered the United States without inspection.

14. On April 15, 1991, the U.S. Immigration and Naturalization Service, the pre-cursor agency to the Department of Homeland Security, initiated deportation proceedings against plaintiff by serving plaintiff with an Order to Show Cause and Notice of Hearing charging deportability. The Notice indicated that a hearing would occur at a future time and place to be set by the Immigration Court.

15. On May 15, 1991, the Los Angeles Immigration Court sent plaintiff notice of a hearing scheduled for May 30, 1991.

16. The notice was returned to the Immigration Court as undeliverable.

17. Plaintiff never received notice of the hearing.

18. Due to his lack of knowledge as to the timing of the hearing, plaintiff did not appear for his hearing on May 30, 1991.

19. At the May 30, 1991 hearing, an Immigration Judge ordered plaintiff deported in absentia.

20. Between 1991 and 2008, plaintiff continued to build a life for himself in the United States.

21. During this time, plaintiff did not attempt to evade immigration authorities.

22. In the early 1990s, plaintiff filed an application for asylum based on his fear of persecution for having remained neutral during the Guatemalan civil war.

23. In the early 1990s, plaintiff participated in an interview with immigration authorities in relation to his asylum application, but the application was never adjudicated by an immigration court.

24. Further, plaintiff filed an application for employment authorization and was eligible to work.  Between 1993 and 2008, plaintiff worked full-time as a foreman with a landscaping company in Pennington, New Jersey.

25. Plaintiff and his long-time partner, Alis Barrera, had two children, who are now 16 and 19 years old.

26. On November 17, 2008, officers from ICE, without any warning to plaintiff, appeared at plaintiff's home and took him into custody on account of his May 30, 1991 in absentia deportation order.

27. On December 10, 2008, plaintiff, through his immigration counsel, filed in Immigration Court a motion to reopen the deportation proceedings alleging that he did not receive notice of the hearing scheduled for May 30, 1991.

28. Under relevant statutory law and implementing regulations, 8 U.S.C. § 1229a(b)(5) & 8 C.F.R. § 1003.23(b)(1)(v), (b)(4)(iii)(C), a motion to reopen an in absentia deportation order alleging lack of notice concerning the hearing that gave rise to the deportation order automatically stays the deportation.

29. The motion filed on behalf of plaintiff specifically cited the above regulation and noted that plaintiff's deportation should be stayed.

30. The Doe defendants knew or should have known that plaintiff filed a motion to reopen alleging a lack of notice and that, accordingly, his deportation was automatically and mandatorily stayed.

31. On December 11, 2008, notwithstanding plaintiff's easily verifiable and mandatory stay of deportation, the Doe defendants took plaintiff into their custody, forcibly placed him on an airplane, and deported plaintiff from the United States to Guatemala.

32. The Doe defendants did not inform plaintiff's immigration counsel of plaintiff's deportation, nor did they permit plaintiff an opportunity to consult with his immigration counsel before he was deported.

33. Following plaintiff's deportation, his counsel continued to pursue remedies in Immigration Court to challenge the initial order directing plaintiff's deportation.

34. Plaintiff's immigration counsel submitted pleadings asserting various defenses to deportation and grounds for plaintiff's eligibility for relief from deportation.

35. On October 16, 2009, an Immigration Judge denied all requests for relief from deportation. The Immigration Judge reasoned, in part, that plaintiff was no longer in the country and, as such, the Immigration Court did not have jurisdiction to consider pleadings submitted on plaintiff's behalf.

36. Plaintiff's immigration counsel appealed the Immigration Judge's order to the Board of Immigration Appeals (BIA).

37. On September 23, 2011, the BIA sustained plaintiff's appeal. The BIA found that plaintiff's deportation on December 11, 2008 was unlawful. The BIA explained:

> [T]he record shows that the Department of Homeland Security (DHS) deported the respondent on December 11, 2008, while his motion to reopen the May 30, 1991, in absentia deportation order was pending. Pursuant to regulation, the filing of a motion to reopen an order entered in absentia in deportation proceedings, including a motion to reopen based on a lack of notice, shall stay the deportation of the alien pending a decision on the motion and the adjudication of any properly filed administrative appeal. 8 C.F.R. § 1003.23(b)(4)(iii)(C). Thus, the respondent's deportation on December 11, 2008, was improper.

38. The BIA vacated plaintiff's removal order and ordered the reopening of plaintiff's removal proceedings.

39. The BIA's order constituted a favorable termination of the defendants' actions that had resulted in plaintiff's deportation.

40. Plaintiff's immigration counsel subsequently requested that Detention and Removal Operations personnel within ICE effectuate the return of plaintiff to the United States.

41. On June 2, 2012, after prolonged efforts by plaintiff's immigration counsel, Detention and Removal Operations personnel within ICE returned plaintiff to the United States, 42 months after his unlawful deportation.

42. Throughout the entire time that plaintiff remained in Guatemala as a result of the Doe defendants' actions, the Doe defendants knew or should have known that they had acted unlawfully in deporting plaintiff and knew or should have known that they had brought about plaintiff's wrongful removal from the United States.

43. Since his return to the United States, plaintiff has resided with his family in Trenton, New Jersey.

44. As a result of plaintiff's unlawful deportation, he was separated from his two U.S. citizen children, who were ages 11 and 14 at the time of his deportation, for 42 months.

45. While in Guatemala, plaintiff feared that he would never be able to return to the United States and that he would be permanently separated from his family.

46. Plaintiff suffered significant financial harms as he was unable to secure employment in Guatemala due to the poor economic conditions in the country.

47. Due to plainitff's inability to provide financially for his children, who were raised in a single parent household in his absence, plaintiff feared greatly for the economic and physical security of his children, which caused plaintiff emotional distress.

48. As a result of his unlawful deportation, plaintiff suffered physical symptoms, including difficulty sleeping, persistent headaches, and digestive problems.

49. Plaintiff's damages in the areas of physical injury, emotional distress, lost liberty and financial losses, as described above, were the direct and proximate result of the conduct of the Doe defendants.

50. At all times relevant to this Complaint, the conduct of the Doe defendants was in willful, reckless, and callous disregard of plaintiff's rights under federal and state law.

## CAUSES OF ACTION

### Count I
### Plaintiff v. Defendant United States of America
### Federal Tort Claims Act – False Imprisonment

51. The Doe defendants unlawfully and without plaintiff's consent deprived plaintiff of his liberty by physically expelling him from the United States, prohibiting his re-entry and failing to act to bring about plaintiff's return to the United States notwithstanding a mandatory stay of deportation.

52. As a result of the Doe defendants' actions and inactions, plaintiff was prevented from entering the United States for 42 months.

53. The deprivation of plaintiff's liberty continued from the date of his deportation on December 11, 2008 through his return to the United States on June 2, 2012.

54. The actions of the Doe defendants constitute the tort of false imprisonment under the laws of the State of New Jersey.

55. Under the Federal Tort Claims Act, Defendant United States of America is liable for these actions.

### Count II
### Plaintiff v. Defendant United States of America
### Federal Tort Claims Act – Negligence

56. The Doe defendants owed a duty to plaintiff not to deport him in violation of the law and not to prevent plaintiff's return to the United States in violation of the law.

57. The Doe defendants' actions resulted in the wrongful deportation of plaintiff and wrongfully prevented plaintiff from returning to the United States.

58. As such, the Doe defendants breached their duty to plaintiff and were a direct and proximate cause and a substantial factor in bringing about plaintiff's damages outlined above.

59. The actions of the Doe defendants constitute the tort of negligence under the laws of the State of New Jersey.

60. Under the Federal Tort Claims Act, Defendant United States of America is liable for these actions.

### Count III
### Plaintiff v. Defendant United States of America
### Federal Tort Claims Act – Intentional Infliction of Emotional Distress

61. The conduct of the Doe defendants in acting to deport plaintiff and in preventing plaintiff from returning to the United States notwithstanding an automatic and mandatory stay of his deportation was outrageous and extreme.

62. The Doe defendants acted intentionally or in deliberate disregard of plaintiff's emotional distress.

63. Plaintiff suffered severe emotional disress as a direct and proximate result of the Doe defendants' actions.

64. The actions of the Doe defendants constitute the tort of intentional infliction of emotional distress under the laws of the State of New Jersey.

65. Under the Federal Tort Claims Act, Defendant United States of America is liable for these actions.

### Count IV
### Plaintiff v. Defendant United States of America
### Federal Tort Claims Act – Negligent Infliction of Emotional Distress

66. The Doe defendants, as outlined above, owed plaintiff a duty of care, breached that duty, and caused plaintiff to suffer severe emotional distress, which was the direct and proximate result of defendants' breach of duty.

67. The actions of the Doe defendants constitute the tort of negligent infliction of emotional distress under the laws of the State of New Jersey.

68. Under the Federal Tort Claims Act, Defendant United States of America is liable for these actions.

### Count V
### Plaintiff v. Defendant United States of America
### Federal Tort Claims Act – Malicious Prosecution/Malicious Use of Process

69. The Doe defendants, by virtue of their actions to deport plaintiff and prevent plaintiff from returning to the United States, instituted a proceeding against plaintiff.

70. Because plaintiff's deportation was automatically and mandatorily stayed by the governing statute and regulations by virtue of the motion to reopen filed on his behalf, there was

no legal cause to justify the Doe defendants' deportation of plaintiff, and defendants' actions were carried out with malice.

71. The BIA's decision finding that plaintiff's deportation was unlawful resulted in a favorable termination of the proceeding brought against plaintiff.

72. As a direct and proximate result of the Doe defendants' actions, plaintff was deprived of his liberty in that he was expelled from the United States, and his return was prohibited.

73. The actions of the Doe defendants constitute the tort of malicious prosecution and/or malicious use of process under the laws of the State of New Jersey.

74. Under the Federal Tort Claims Act, Defendant United States of America is liable for these actions.

**Count VI**
**Plaintiff v. Doe Defendants**
**Federal Constitutional Claim – Violation of Fourth Amendment – Unreasonable Seizure**

75. The Doe defendants' forcible and unlawful deportation of plaintiff from the United States and actions to prevent plaintiff from returning to the United States, in clear violation of the mandatory stay of plaintiff's deportation, constituted an unreasonable seizure in violation of plaintiff's rights under the Fourth Amendment to the United States Constitution.

**Count VII**
**Plaintiff v. Doe Defendants**
**Federal Constitutional Claim – Violation of Fifth Amendment – Substantive Due Process**

76. The Doe defendants' forcible and unlawful deportation of plaintiff from the United States and actions to prevent plaintiff from returning to the United States, in clear violation of the mandatory stay of plaintiff's deportation, was conscience shocking and/or

deliberately indifferent to plaintiff's rights, and, as such violated plaintiff's right to due process of law under the Fifth Amendment to the United States Constitution.

**Count VIII**
**Plaintiff v. Doe Defendants**
**Federal Constitutional Claim – Violation of Fifth Amendment – Procedural Due Process**

77. The Doe defendants' actions in deporting plaintiff and in preventing plaintiff from returning to the United States in violation of the statute and regulations governing the conduct of U.S. ICE violated plaintiff's rights to due process of law as guaranteed by the Fifth Amendment to the United States Constitution.

78. The Doe defendants' actions in deporting plaintiff deprived plaintiff of his liberty and did so without providing plaintiff with procedural protections, including timely and sufficient notice that he would be deported and an opportunity to be heard to properly assert that his deportation was legally barred, and therefore violated plaintiff's rights to due process of law as guaranteed by the Fifth Amendment to the United States Constitution.

**Wherefore**, plaintiff respectfully requests:

A. Compensatory damages as to all defendants;

B. Punitive damages as to the Doe defendants;

C. Reasonable attorneys' fees and costs as to all defendants;

D. Such other and further relief as may appear just and appropriate.

Plaintiff hereby demands a jury trial on Counts VI, VII and VIII.

/s/ Jonathan H. Feinberg
Jonathan H. Feinberg
Attorney I.D. No. 01376-2001 (NJ)
KAIRYS, RUDOVSKY, MESSING & FEINBERG LLP
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA  19106
215-925-4400
215-925-5365 (fax)
jfeinberg@krlawphila.com

*Counsel for Plaintiff*

I hereby certify that the matter in controversy is not the subject of any other court, arbitration or administrative proceeding.

/s/ Jonathan H. Feinberg
Jonathan H. Feinberg