**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                   :

HERIBERTO AVALOS-PALMA,            :
                                     :

                 Plaintiff,       :
                                     :       Civil Action No. 13-5481(FLW)

                 v.             :
                                     :            **OPINION**

UNITED STATES OF AMERICA;       :
U.S. IMMIGRATION AND CUSTOMS    :
ENFORCEMENT OFFICER JOHN DOE(S),   :
                                     :

                 Defendants.     :
_____:

**WOLFSON, United States District Judge:**

       Defendants, the United States of America and United States Immigration and Customs Enforcement Officer John Doe(s) (collectively, "the Government" or "Defendants"), move to dismiss, pursuant to Federal Rule of Civil Procedure (12)(b)(1), Plaintiff Heriberto Avalos-Palma's claims brought under the Federal Tort Claims Act ("FTCA") for lack of subject matter jurisdiction. Plaintiff initiated this action by alleging that he suffered injuries as a result of his improper deportation from the United States, by Defendants, in 2008. In his Complaint, Plaintiff asserts claims of: (1) false imprisonment; (2) negligence; (3) intentional infliction of emotional distress; (4) negligent infliction of emotional distress; and (5) malicious prosecution and malicious use of process. Additionally, Plaintiff brings several claims under the U.S. Constitution alleging that Doe Defendants violated his Fourth and Fifth Amendment rights. For the foregoing reasons, Defendants' Motion is granted in part and denied in part as follows: the Court grants Defendants' Motion to Dismiss on Counts I and V, and denies Defendants' Motion to Dismiss on Counts II, III, and IV.

## BACKGROUND

When subject matter jurisdiction is challenged under Rule 12(b)(1), the Court "must start by determining whether [it is] dealing with a facial or factual attack to jurisdiction.  In reviewing a facial challenge, the Court must dismiss a plaintiff's claims if "the allegations on the face of the complaint, taken as true, [do not] allege facts sufficient to invoke [its] jurisdiction." *Licata v. U.S. Postal Serv.,* 33 F.3d 259, 260 (3d Cir. 1994).   Therefore, in order to address the Government's 12(b)(1) Motion, the Court will look to the face of Plaintiff's Complaint and take its allegations as true.

Mr. Avalos-Palma is a native of Guatemala who entered the United States without inspection on or about April 14, 1991.  *See* Complaint at ¶¶ 12-13.  As a result, on April 15, 1991, the U.S. Immigration and Naturalization Service ("INS") commenced deportation proceedings against Avalos-Palma.   *Id.* at ¶ 14.   The Los Angeles Immigration Court subsequently sent Avalos-Palma notice of a hearing scheduled for May 30, 1991; however, the notice was returned as undeliverable and Avalos-Palma never received notice of the hearing.  *Id.* at ¶¶ 15-17.  Consequently, Avalos-Palma failed to appear at his May 30, 1991 hearing, at which time an Immigration Judge ordered him deported *in absentia*.  *Id.* at ¶¶ 18-19.  From 1991 to 2008, Avalos-Palma remained in the United States and had two children with his partner, Alis Barrera.  *Id.* at ¶¶ 20, 25.  During this period, he was authorized as work-eligible and worked as a foreman for a landscaping company in Pennington, New Jersey.  *Id.* at ¶ 24.

On November 17, 2008, agents of U.S. Immigration and Customs and Enforcement ("ICE") took Avalos-Palma from his home in Trenton and placed him in their custody pursuant to the May 30, 1991 deportation order.  *Id.* at ¶¶ 6, 26.  Subsequently, on December 10, 2008, Avalos-Palma's immigration counsel filed a motion to reopen deportation proceedings before an

Immigration Judge.  *Id*. at ¶ 27.  In particular, Avalos-Palma asserted that the filing of a motion to reopen an *in absentia* deportation order, based upon lack of notice concerning the hearing that led to the deportation order, automatically stays the deportation under 8 U.S.C. § 1229a(b)(5) and 8 C.F.R. § 1003.23(b)(1)(v), (b)(4)(iii)(C).  *Id*. at ¶ 28.  Despite the continued pendency of his motion to reopen, ICE agents, without advising Plaintiff's counsel or providing Plaintiff with the opportunity to consult with counsel, deported Avalos-Palma from the United States to Guatemala on December 11, 2008, in violation of the mandatory stay.  *Id*. at ¶¶ 31-32.

In response to his improper deportation, Avalos-Palma's immigration counsel continued to litigate on his behalf.  In particular, his counsel challenged the 1991 deportation order and asserted various defenses and grounds for relief from his deportation.  *Id*. at ¶¶ 33-34.  However, on October 16, 2009, an Immigration Judge denied all of Avalos-Palma's requests for relief, ruling, in part, that the Immigration Court did not have jurisdiction to consider pleadings submitted on Plaintiff's behalf because Avalos-Palma was no longer in the United States.  *Id*. at ¶ 35.  In doing so, the Immigration Judge effectively upheld the improper deportation of Avalos-Palma.  Subsequently, Avalos-Palma's counsel appealed that decision to the Board of Immigration Appeals ("BIA").  *Id*. at ¶ 36.  Almost two years later, on September 23, 2011, the BIA granted Avalos-Palma's appeal, finding that his 2008 deportation was an unlawful violation of the mandatory stay required under 8 C.F.R. § 1003.23(b)(4)(iii)(C).  *Id*. at ¶ 37.  The BIA vacated Avalos-Palma's removal order and ordered the reopening of his deportation proceedings. *Id*. at ¶ 38.  As far as the record currently indicates, those proceedings remain open.  On June 2, 2012, approximately 42 months after the improper deportation, ICE agents effectuated Avalos-Palma's return to the United States.  *Id*. at ¶ 41.

On March 22, 2013, within two years of the BIA's decision, Avalos-Palma submitted an Administrative Tort Claim ("SF-95") to the U.S. Department of Homeland Security ("DHS"). *Id.* at ¶ 4. Avalos-Palma alleged that he had suffered physical injury, emotional distress, and financial and liberty losses as a result of his deportation. *Id.* at ¶ 49. In particular, Avalos-Palma claimed that he feared he would never return to the United States and that he was permanently separated from his family, that he suffered financial harms because he was unable to secure employment while in Guatemala, that his inability to provide for his family and fear for the economic and physical security of his children caused him emotional distress, and that he suffered sleeping problems, digestive problems, and persistent headaches. *Id.* at ¶¶ 45-49. That claim was denied on August 13, 2013. *Id.* at ¶ 4. Thereafter, Avalos-Palma filed the instant action in September 2013.

Counts I through V of Avalos-Palma's Complaint raise various tort claims – brought pursuant to the FTCA – against the United States of America. In Count I, Avalos-Palma avers that Defendants are liable for false imprisonment as a result of their actions in deporting him from, and preventing his re-entry to, the United States. *See* Complaint at ¶¶ 51-55. In Count II, Avalos-Palma brings a negligence claim asserting that Defendants had a duty not to deport him in violation of the mandatory stay, and that this duty was breached through his deportation. *Id.* at ¶¶ 56-60. Under Count III, Avalos-Palma alleges that Defendants' actions in deporting him and preventing his re-entry constitute intentional infliction of emotional distress. *Id.* at ¶¶ 61-65. Alternatively, in Count IV, Avalos-Palma brings a related claim for negligent infliction of emotional distress. *Id.* at ¶¶ 66-68. Finally, Avalos-Palma brings malicious prosecution and malicious use of process claims against Defendants in Count V, alleging that his deportation was a separate proceeding that the Government instituted against him with malice. *Id.* at ¶¶ 69-74.

In that regard, Avalos-Palma argues that the BIA's determination that deportation was improper was a favorable termination of this proceeding.  *Id.* at ¶ 71.

The Government moves to dismiss Plaintiff's FTCA claims pursuant to Federal Rule of Civil Procedure (12)(b)(1) for lack of subject matter jurisdiction on three grounds:  (1) Avalos-Palma's claims are time-barred by the two-year statute of limitations for FTCA actions under 28 U.S.C. § 2401(b); (2) Congress barred judicial review of Avalos-Palma's FTCA claims in 8 U.S.C. § 1252(g); and (3) Avalos-Palma fails to identify a private analogue for his FTCA claims as required under 28 U.S.C. §§ 1346(b)(1), 2674.[1]

## DISCUSSION

Plaintiff's tort claims against the United States of America are governed by the FTCA, 28 U.S.C. §§ 1346(b), 2401, 2671, *et seq.*  "In 1946, Congress passed the FTCA, which waived the sovereign immunity of the United States for certain torts committed by federal employees." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475-76 (1994) (citing 28 U.S.C. § 1346(b)).  Thus, a claimant may bring an action for money damages against the United States, provided that the claimant has first exhausted administrative remedies by presenting his claim to the appropriate federal agency. *See* 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 113 (1993).  If the agency denies the administrative claim, as the DHS did here in August 2013, the claimant "may file an action on her claim in a district court."  *Santos ex rel. Beato v. United States*, 559 F.3d 189, 193 (3d Cir. 2009) (discussing 28 U.S.C. §§ 2675(a), 2672).

---

[1] While ICE moves to dismiss Avalos-Palma's entire Complaint for lack of subject matter jurisdiction, nowhere in ICE's briefing does ICE address Avalos-Palma's Constitutional claims. As a result of ICE's failure to address those claims – which are separate and distinct from the FTCA claims – the Court will not discuss them here, and they remain pending.

## I.        Statute of Limitations under the FTCA

Under the FTCA, a "tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two-years after such claim accrues . . . ."  28 U.S.C. § 2401(b).  In order to maintain Congress' intent to have a "single statute of limitations govern all tort claims asserted against the United States," federal law governs when a claim accrues under the FTCA.  *Tyminski v. United States*, 481 F.2d 257, 262-63 (3d Cir. 1973).  The Supreme Court has cautioned courts to construe the limitations provision in 28 U.S.C. § 2401(b) narrowly because the FTCA  "waives the immunity of the United States," and courts should not take it upon themselves "to extend the waiver beyond that which Congress intended."  *United States v. Kubrick*, 444 U.S. 111, 117-18 (1979).  Thus, courts are "not free to construe it so as to defeat its obvious purpose, which is to encourage the prompt presentation of claims."  *Id*. at 117.  *See Zeleznik v. United States*, 770 F.2d 20, 22 (3d Cir. 1985) (explaining that the purpose of the limitation period is to encourage the prompt filing of claims and protect defendants "from having to defend actions where the truth-finding process is impaired by the process of time.").

### A.        Accrual of Limitation Period

In general, courts have held that tort claims under the FTCA accrue when an injured party learns of his injury and "has or should have had notice that he had an action to bring."  *See Zeleznik*, 770 F.2d at 22; *Kubrick*, 444 U.S. at 119, 122-23; *Royster v. United States*, 475 Fed. Appx. 417, 420 (3d Cir. 2012) ("We have recognized that a claim accrues when an injured party knows or reasonably should know both the existence and cause of his injury.").  The Court in *Kubrick* "indicated that the crucial question in determining the accrual date for statute of limitations purposes [is] whether the injured party had sufficient notice of the invasion of his

6

legal rights to require that he investigate and make a timely claim or risk its loss." *Zeleznik*, 770 F.2d at 23; *see Kubrick*, 444 U.S. at 122-23 (holding FTCA claim accrues when plaintiff learns that he has been hurt and knows who has inflicted the injury, not when plaintiff gains awareness that his injury was negligently inflicted). Thus, once a plaintiff is aware of his injury, "the burden is on him to determine within the limitations period whether any party may be liable to him." *Zeleznik*, 770 F.2d at 22-23.

Here, Plaintiff contends that his claims did not accrue until the BIA's September 23, 2011 decision finding that his deportation was improper. Pl. Resp. at 13. Plaintiff argues that his FTCA claims were contingent upon the BIA's finding of unlawfulness, and, as such, Plaintiff could not have litigated his claims prior to that finding. *Id*. Accordingly, based on Plaintiff's position, the submission of his Administrative Tort Claim on March 22, 2013, would be timely because it would fall within the two-year limitation period provided in 28 U.S.C. § 2401(b). To the contrary, the Government argues that all of Plaintiff's FTCA claims are barred by the two-year statute of limitations period in 28 U.S.C. § 2401(b). *See* Defs.' Mem. at 10. In that connection, the Government claims that while "all events relevant to Plaintiff's claim occurred in or before December 2008," Plaintiff failed to file an administrative claim until March 2013. *Id.* at 1. In particular, the Government asserts that the fact Plaintiff's counsel filed a motion to reopen deportation proceedings - in order to enforce the mandatory stay provision - on December 10, 2008, demonstrates that Plaintiff was aware that his legal rights were invaded when he was thereafter deported on December 11, 2008. *Id*. at 11. Simply put, the Government submits that Plaintiff's tort claims accrued upon his deportation. The Court agrees.

In this case, Plaintiff does not dispute that he was aware that he was "injured" when ICE agents effectuated his deportation on December 11, 2008, in violation of the mandatory stay. Pl.

Resp. at 18.  Thus, under the traditional rule in *Kubrick*, Plaintiff's FTCA claims accrued when he became aware of his injury in December 2008.  Plaintiff's argument that he was not aware of his legal rights until the BIA rendered its decision is misplaced.  The inquiry here is not when Plaintiff's rights were vindicated, but rather, when he was aware of his injury.  Clearly, Plaintiff knew that ICE deported him in violation of the mandatory stay because that was the precise issue Plaintiff's counsel contested before the Immigration Judge, and ultimately, appealed to the BIA.  Plaintiff did not have to await the decision by the BIA in order to determine that he was harmed by ICE's conduct.  Indeed, the Supreme Court's holding regarding accrual of FTCA claims is unambiguous: "that accrual of a claim [does not] await awareness by the plaintiff that his injury was [unlawfully] inflicted.  A plaintiff such as [Avalos-Palma], armed with the facts about the harm done to him, can protect himself by seeking advice in the . . . legal community."  *Kubrick*, 444 U.S. at 123.  To excuse Plaintiff from doing so by postponing the accrual of his claim would "undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the Government."  *Id.*  Accordingly, I find that Plaintiff's claims accrued upon his deportation in December 2008.[2]  However, that does not end the Court's analysis; my next inquiry is whether equitable tolling can be justified to save Plaintiff's claims.

**B.    Equitable Tolling**

While the parties dispute the date on which Plaintiff's FTCA claims accrued, that issue "is distinct from equitable tolling," which applies when extraordinary circumstances prevent a plaintiff from asserting his or her claim.  *Santos ex rel. Beato*, 559 F.3d at 199.  Thus, this Court

---

[2]  Plaintiff also relies on *Heck v. Humphrey*, 512 U.S. 477 (1994), for the proposition that he should be excused from filing his tort claims with the administrative agency while the BIA's decision was pending, because doing so would risk inconsistent judgments.  While the Court questions *Heck*'s applicability in this context, I, nevertheless, need not answer this question because I find that Plaintiff's claims are timely due to equitable tolling.

will analyze whether the two-year limitation period should be equitably tolled.  I find that the period of time in which Plaintiff was in Guatemala based upon his improper deportation is deserving of equitable tolling.

The law in this circuit, following Supreme Court precedent, is that the doctrine of equitable tolling applies to FTCA actions.  *See Santos ex rel. Beato*, 559 F.3d at 195-98; *see also, Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95-96 (1990) ("We therefore hold that the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States.").  "Equitable tolling, if available, can rescue a claim otherwise barred as untimely by a statute of limitations when a plaintiff has 'been prevented from filing in a timely manner due to sufficiently inequitable circumstances.'"  *Santos ex rel. Beato*, 559 F.3d at 197 (3d Cir. 2009) (quoting *Seitzinger v. Reading Hosp. & Med. Ctr.,* 165 F.3d 236, 240 (3d Cir. 1999)).  The sorts of inequitable circumstances sufficient to warrant tolling include situations in which: "(1) the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) the plaintiff has timely asserted his or her rights mistakenly in the wrong forum."  *Hedges v. United States,* 404 F.3d 744, 751 (3d Cir. 2005) (emphasis added) (internal quotation marks omitted).  However, a plaintiff will not receive the benefit of equitable tolling unless he exercised due diligence in pursuing and preserving his or her claim.  *Irwin*, 498 U.S. at 96.  Equitable tolling is an extraordinary remedy that the courts extend "only sparingly."  *Id.*; *Hedges,* 404 F.3d at 751.

I find that equitable tolling is appropriate here because the personal circumstances of Plaintiff's case were extraordinary and prevented him from asserting his rights.  Indeed, "[f]ederal courts have applied the doctrine of equitable tolling . . . [where] the plaintiffs were

prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant." *Alvarez-Machain v. United States.* 96 F.3d 1246, 1251 (9th Cir. 1996) (citations omitted). In particular, the Third Circuit, in *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998), cited approvingly *Alvarez-Machain,* wherein the Ninth Circuit found that an alien's FTCA claims warranted equitable tolling because he had been incarcerated by the U.S. government for over two years, which prevented him from accessing the courts. Along those lines, other courts have found that equitable tolling is appropriate when a plaintiff is physically prevented from accessing a "functioning court" or "if there is no real possibility of gaining relief in court." *See Seattle Audubon Soc'y v. Robertson*, 931 F.2d 590, 596 (9th Cir. 1991); *Osbourne v. United States*, 164 F.2d 767, 769 (2nd Cir. 1947); *Forti v. Suarez-Mason*, 672 F. Supp. 1531, 1550 (N.D. Cal. 1987).

Here, Plaintiff was deported from the United States in clear violation of the mandate to stay an *in absentia* deportation order upon the filing of a motion to reopen and, importantly, Plaintiff was prevented by ICE from reentering the United States for 42 months. As a result of ICE's action, Plaintiff was removed to Guatemala during the period in which the Government argues that Plaintiff was required to bring his claims. Thus, this is not a case where a plaintiff sat on his rights because Avalos-Palma diligently pursued his return to the United States in order to regain access to a functioning court to assert his tort claims against the Government. Moreover, the fact that Plaintiff's counsel continued to litigate on Avalos-Palma's behalf while he was in Guatemala shows that Plaintiff diligently attempted to mitigate his losses. The Government fails to cite any reported cases to demonstrate that an out-of-country claimant – who cannot reenter the United States – can bring FTCA claims without suffering extreme hardship. Significantly, Plaintiff would not have been able to effectively prosecute his claims while in Guatemala. He

would be precluded from appearing at any of the proceedings that are required of a civil litigant, including depositions, discovery proceedings, and ultimately, a trial.  In that respect, even if Plaintiff filed tort claims against the Government from Guatemala, he had no real possibility of gaining relief in court while he was prevented from re-entering the United States.  Accordingly, equitable tolling of the statute of limitations is warranted in this case; since Plaintiff returned to the United States in June 2012, the filing of Plaintiff's March 2013 Administrative Tort Claim was timely.

## II.    Jurisdiction under 8 U.S.C. 1252(g)

In general, under 8 U.S.C. § 1252(g), "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  In other words, the decision to execute removal orders is a discretionary act on the part of the Attorney General.  Here, applying § 1252(g), the Government argues that Plaintiff's claims stem from ICE's execution of Plaintiff's removal order, and, as a result, this Court lacks subject matter jurisdiction to consider Plaintiff's Complaint.[3]  Defs.' Mem. at 8.   The Government reasons that Plaintiff's injuries were the direct consequence of ICE's decision to

---

[3]  Additionally, ICE cites the Supreme Court's decision in *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999) for the proposition that 8 U.S.C. §1252(b)(9) limits Plaintiff's ability to challenge his removal order to a petition for review with the Third Circuit.  *See* Defs.' Mem. at 9 n.2.  This provision states, in part, that "judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." However, here Plaintiff is not challenging the BIA's decision; rather, he is bringing civil tort claims against the United States for violating the mandatory stay.  Thus, Plaintiff is not seeking judicial review of the BIA's decision and, therefore, Section 1252(b)(9) is not applicable.  *See Aguilar v. U.S. Immigration and Customs Enforcement Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 11 (1st Cir. 2007) ("We thus read the words 'arising from' in section 1252(b)(9) to exclude claims that are independent of, or wholly collateral to, the removal process.").

execute his removal order even though the deportation violated the mandatory stay.  Thus, the Government asserts that Plaintiff's claims fall within Section 1252(g), and, accordingly, this Court lacks jurisdiction to entertain suit.  On the other hand, Plaintiff contends that Section 1252(g) must be construed narrowly, and, as a result, it does not preclude this Court from considering a claim that federal immigration agents violated a mandatory stay of deportation.  Pl. Resp. at 8.  In sum, Plaintiff argues – and the Court agrees – that ICE lacked discretion in determining whether to impose a stay on Plaintiff's deportation; therefore, Plaintiff's claims are not barred by Section 1252(g).

The Government relies on *Barrios v. Att'y Gen. of U.S.*, 452 Fed. Appx. 196 (3d Cir. 2011), for the proposition that 8 U.S.C. § 1252(g) bars the Court from hearing Plaintiff's tort claims because the denial of a stay is within ICE's power to execute a removal order.  In *Barrios*, INS instituted deportation proceedings against the plaintiff, a Guatemalan national, after he illegally entered the United States.  452 Fed. Appx. at 197.  The immigration judge granted the plaintiff a voluntary departure; however, he remained in the United States in violation of that order.  *Id*.  Several years later, the plaintiff filed a motion with the BIA to stay his deportation under 8 C.F.R. § 1003.2(f).  *Id*.  After the BIA denied that motion, the Plaintiff filed a petition with the Third Circuit to review the BIA's decision.  *Id*.  However, the Third Circuit ultimately ruled that they lacked jurisdiction to review the BIA's decision to deny the stay under Section 1252(g).  *Id.* at 198.  Specifically, the court held that the "BIA's denial of a stay of removal falls within its power to execute a removal order."  *Id*.  However, *Barrios* is distinguishable from this case.

Significantly, the plaintiff in *Barrios* requested a stay from the BIA under 8 C.F.R. §1003.2(f), a discretionary decision, whereas here, the stay was mandatory pursuant to 8 C.F.R.

§ 1003.23(b)(4)(iii)(C).   This is a crucial difference because under § 1003.23(b)(4)(iii)(C), pursuant to procedural due process concerns, the filing of a motion to reopen automatically stayed Plaintiff's removal order; thus, this provision provides ICE with no discretion.   In other words, ICE was required to stay Plaintiff's deportation upon the filing of the motion to reopen for lack of notice.   On the other hand, a motion to stay a voluntary departure order made to the BIA, such as the one in *Barrios*, does not mandate a stay.   In that instance, the grant or denial of a motion to stay a voluntary departure order is left to the discretion of the BIA.   The Court's conclusion in this regard is supported by case law.

To begin, in *Reno*, the Supreme Court held that 8 U.S.C. § 1252(g) must be read narrowly, ruling that "the provision applies only to three discrete actions that the Attorney General may take:   her decision or action [to] *commence* proceedings, *adjudicate* cases, or *execute* removal orders.'"   525 U.S. at 482 (internal quotation marks omitted).   The Court rejected the "unexamined assumption that § 1252(g) covers the universe of deportation claims that it is sort of a 'zipper' clause that says 'no judicial review in deportation cases unless this section provides judicial review.'"   *Id.*   Additionally, the Third Circuit has interpreted the jurisdictional bar in Section 1252(g) to apply "only to claims of selective enforcement."   *See Williams v. Att'y Gen. of U.S.*, 458 Fed. Appx. 148, 150-51 (3d Cir. 2012); *see also Garcia v. Att'y Gen. of U.S.*, 553 F.3d 724, 729 (3d Cir. 2009) (emphasizing the difference between challenging the government's discretionary decision to commence proceedings and authority to commence those proceedings).   Thus, the Third Circuit has interpreted Section 1252(g) to only preclude judicial review of discretionary decisions or actions of the Attorney General to commence proceedings, adjudicate cases, or execute removal orders.

The Supreme Court's opinion in *United States v. Gaubert* is instructive on the discretionary nature of actions by government employees.  499 U.S. 315, 322 (1991).  Although that case interpreted the discretionary function exception in 28 U.S.C. § 2680(a), the Court's ruling on what constitutes "discretion" on the part of ICE is applicable here.  In particular, the Court ruled that discretionary acts are those which "involv[e] an element of judgment or choice." *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988)) (internal quotation marks omitted).  Furthermore, "the requirement of judgment or choice is not satisfied 'if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" *Gaubert,* 499 U.S. at 322 (quoting *Berkovitz by Berkovitz*, 486 U.S. at 536).  In other words, when a federal statute mandates particular conduct on the part of the government, there is no discretion.  *See Berkovitz by Berkovitz*, 486 U.S. at 536.

For example, the court, in *Turnbull v. United States*, No. 06-858, 2007 WL 2153279, at *4-5 (N.D. Ohio July 23, 2007), held that Section 1252(g) does not bar a plaintiff's FTCA claims where the government ignored an order by a magistrate judge to stay a deportation.  The court reasoned that the plaintiff's tort action did not "arise from defendants' original decision to execute a removal order," but rather, plaintiff sought damages "that flowed from defendants' refusal to abide by" the court's stay order.  *Turnbull*, at *5; *see, e.g., El Badrawi v. Dep't of Homeland Sec.*, 579 F. Supp.2d 249 (D. Conn. 2008) (ruling that the plaintiff's FTCA claims were not barred by § 1252(g) because a challenge of DHS's decisions to arrest and detain the plaintiff were "separate and discrete from the agency's decision to initiate removal proceedings against him."); *Garcia v. Att'y Gen. of U.S.*, 553 F.3d 724, 728-29 (3d Cir. 2009) (finding that § 1252(g) does not apply to bar FCTA claims in a situation where the government failed to follow

a statutory requirement to commence deportation proceedings against an alien within a certain period of time).

Here, based on the foregoing, the Court disagrees with the Government's assertion that Plaintiff's claims arise from ICE's decision to "execute" his removal order.  Rather, Plaintiff's FTCA claims stem from ICE's failure to obey the statutorily imposed mandatory stay provision under 8 C.F.R. § 1003.23(b)(4)(iii)(C).  To be clear, Plaintiff's Complaint arises from ICE's failure to abide by the stay, not from the execution of his removal order.  Furthermore, this Court must construe Section 1252(g) "narrowly" and "only to claims of selective enforcement."  *Reno*, 525 U.S. at 482; *Williams*, 458 Fed. Appx. at 150-51.  Permitting the Government to use Section 1252(g) as a shield under the circumstances attendant here would contravene Congress' intent in enacting 8 U.S.C. § 1252(g).  Section 1252(g) is only intended to bar courts from interfering with discretionary decisions of the Attorney General in the context of deportation proceedings.  In this case, there is no dispute that the mandatory stay provision under 8 C.F.R. § 1003.23(b)(4)(iii)(C) was violated when ICE agents deported Plaintiff despite his motion to reopen an *in absentia* deportation order for lack of notice.  Indeed, the language in 8 C.F.R. § 1003.23(b)(4)(iii)(C) is clear:  "[t]he filing of a motion to reopen under paragraph (b)(4)(iii)(A) of this section shall *stay* the deportation of the alien pending decision on the motion and the adjudication of any properly filed administrative appeal." (emphasis added).  Therefore, the statute provided no room for discretion on the part of ICE agents to stay Plaintiff's deportation in this case.  Instead, once Plaintiff filed the motion to reopen deportation proceedings, ICE agents were required to stay Plaintiff's deportation.  Because the ICE agents violated the mandatory stay, the Government does not enjoy the immunity of Section 1252(g).  Put differently, Plaintiff is not challenging a discretionary decision of ICE to execute his removal, but is seeking relief for injuries suffered

due to ICE's violation of his right to a mandatory stay of his deportation.   Accordingly, the Government's position that 8 U.S.C. § 1252(g) precludes this Court from entertaining Plaintiff's FTCA claims for want of jurisdiction is rejected.

### III.   The FTCA's Private Analogue Requirement

The Government further moves to dismiss Plaintiff's Complaint on the basis that Plaintiff's claims lack a private analogue, as required by the FTCA, under New Jersey law. "The FTCA waives the sovereign immunity of the United States in its district courts for tort claims 'caused by the negligent or wrongful act or omission of any employee of ICE while acting within the scope of his office or employment, under circumstances [in which] the United States, *if a private person*, would be liable to the claimant *in accordance with the law of the place where the act or omission occurred*.'"   *Lomando v. United States*, 667 F.3d 363, 372 (3d Cir. 2011) (quoting 28 U.S.C. § 1346(b)(1) (emphasis added)).   Congress reiterated the FTCA's private analogue requirement in 28 U.S.C. § 2674, which provides that the United States shall be liable "in the same manner and to the same extent as a private individual under like circumstances . . . ."   *See Cestonaro v. United States*, 211 F.3d 749, 753 (3d Cir. 2000); *Indian Towing Co. v. United States*, 350 U.S. 61, 63 (1955).   This requirement compels this Court to find a parallel to Plaintiff's claims under local state law.   *See United States v. Olson*, 546 U.S. 43, 44 (2005) ("We here interpret these words to mean what they say, namely, that the United States waives sovereign immunity 'under circumstances' where local law would make a '*private person*' liable in tort.").   Put differently, "the Act requires a court to look to the state-law liability of private entities, not to that of public entities, when assessing the Government's liability under the FTCA [even] in the performance of activities which private persons do not perform."   *See Liranzo v. United States*, 690 F.3d 78, 86 (2d Cir. 2012) (quoting *Olson*, 546 U.S. at 46) (internal quotation

marks omitted).   Thus, in order for there to be a waiver of the Government's sovereign immunity, this Court must identify similar liability imposed on private actors under New Jersey law.  *See Rayonier Inc. v. United States*, 352 U.S. 315, 376 (1957).

More specifically, in *Indian Towing Co*., the Supreme Court rejected the defendant's contention that the private analogue requirement "must be read as excluding liability in the performance of activities which private persons do not perform."  350 U.S. at 64.  Furthermore, the Court refused to adopt a construction of 28 U.S.C. §2674 in which "there would be no liability for the negligent performance of uniquely governmental functions."  *Indian Towing Co.,* 350 U.S. at 64 (internal quotation marks omitted).  While the Court noted that "all Government activity is inescapably 'uniquely governmental' in that it is performed by the Government," this does not prohibit a claimant injured by an agent of ICE from recovery under the FTCA.  *Id.* at 67.   Thus, "the broad and just purpose which the statute was designed to effect was to compensate the victims of negligence in the conduct of governmental activities in circumstances like unto those in which a private person would be liable. . . ."  *Id*. at 68-69.

As a preliminary issue, the parties dispute the scope of the private analogue doctrine. The Government argues that this Court must apply Section 1346(b)(1) restrictively, claiming that Plaintiff must identify a specific private analogue to his tort claims.  Defs.' Reply Mem. at 14-15; Defs.' Mem. at 18-21.  In particular, the Government asserts that Plaintiff merely alleges a single "Improper Removal" tort claim rather than the various negligence theories in Plaintiff's Complaint.  Defs.' Mem. at 19.   In that connection, the Government argues that improper removal is not analogous to any duty imposed on private actors under New Jersey law because deportation is an action "exclusively within the province of the federal sovereign."   *Id*. at 19-20. In other words, the Government reads Section 1346(b)(1) to require Plaintiff to identify a duty on

private actors under New Jersey law that is directly analogous to the improper removal conducted by ICE.

I find the Government's interpretation of the private analogue doctrine too rigid in light of the Supreme Court's decisions in *Indian Towing Co.* and *Olson*. This Court need not find liability imposed on private actors for deportation under New Jersey law to satisfy the private analogue requirement. *See Olson*, 546 U.S. at 46 ("'[L]ike circumstances' do not restrict a court's inquiry to the *same circumstances,* but require it to look further afield."). Rather, even though there is no duty on private actors to abstain from deporting a person in violation of a statute in New Jersey, this Court "must look further afield" for a private analogue. *Olson*, 546 U.S. at 44.

For example, in *Indian Towing Co.* the Supreme Court considered a claim that the Coast Guard was negligently operating lighthouses. 350 U.S. at 61-63. While the Court agreed with the government that operating lighthouses was a uniquely governmental function, "private individuals, who do not operate lighthouses, nonetheless may create a relationship with third parties that is *similar* to the relationship between a lighthouse operator and a ship dependent on the lighthouse's beacon." *Olson*, 546 U.S. at 47 (emphasis added) (explaining *Indian Towing Co.*, 350 U.S. at 64-65). Thus, the Court in *Indian Towing Co.* iterated that a plaintiff need not find liability under local state law that is directly analogous to his or her FTCA claim in order to satisfy the private analogue requirement. Instead, similar duties imposed on private actors under state law is sufficient. Consequently, this Court's inquiry is focused on whether there is a relationship that imposes a duty under New Jersey law that is similar to the one between the ICE agents and Plaintiff in this case. With that in mind, I now turn to each of the counts.

18

### A.    False imprisonment

In Count I, Plaintiff brings a false imprisonment claim against Defendants for deporting him, prohibiting his re-entry to the United States, and failing to effectuate his return to the United States despite a mandatory stay of deportation.  *See* Complaint at ¶ 51.  Under New Jersey law, "false imprisonment is the constraint of the person without legal justification."  *Merman v. City of Camden*, 824 F. Supp. 2d 581, 598 (D.N.J. 2010).   "The tort of false imprisonment has two elements:  (1) an arrest or detention of the person against his or her will; and (2) lack of legal authority or legal justification."  *Id.* (quoting *Leang v. Jersey City Bd. Of Educ.*, 969 A.2d 1097, 1117 (N. J. 2009)) (internal quotation marks omitted).  Furthermore, New Jersey does not impose a state of mind requirement on an actor committing the tort of false imprisonment.  *See Merman*, 824 F. Supp. 2d at 598 ("To commit the tort, an officer need not act in bad faith or with intentional or willful disregard of a person's rights; rather, the officer may falsely imprison a person through mere negligence.").  In order for Plaintiff's false imprisonment claim against the Government to proceed, Plaintiff must show that Defendants' actions would have created liability for false imprisonment under New Jersey law if they were committed by a private actor.

Here, Plaintiff's false imprisonment claim fails to satisfy the private analogue requirement.  For support, Plaintiff relies on the Second Circuit's reasoning in *Liranzo*.  There, the court analogized detention of the plaintiff by immigration officers to "a person who, entirely in his or her private capacity, places someone under arrest for an alleged violation of the law . . . . absent a legal privilege to do so."[4]  *Liranzo*, 690 F.3d at 94-95.  The court ruled that in such a situation, "the defendant will be liable for false arrest under New York law if the arrest is not privileged."  *Id.* at 96.  *Liranzo* is distinguishable from this case because, here, Plaintiff asserts

---

[4] The court in *Liranzo* used the terms false arrest and false imprisonment interchangeably.  690 F.3d 98 n.13.

his false imprisonment claim in the context of deportation rather than detention. False imprisonment is constraint or confinement of a person without legal justification; it is not the act of ejectment or preventing re-entry. Unsurprisingly, while this Court has found many cases analogizing false imprisonment through detention by immigration agents to detention by private citizens, false imprisonment in the context of deportation lacks a private analogue. In fact, it appears that Plaintiff's claim is more in line with an action for the common law tort of wrongful ejection rather than false imprisonment. However, to avoid rendering an advisory ruling, the Court does not comment on whether a claim for wrongful ejection, which is not pled here, would satisfy the private analogue requirement. Accordingly, Plaintiff's false imprisonment claim is dismissed.

**B.     Negligence, Intentional Infliction of Emotional Distress, and Negligent Infliction of Emotional Distress**

In Count II, Plaintiff brings a negligence claim against the Government, alleging that ICE owed Plaintiff a duty of care not to deport him from, and prevent his re-entry to, the United States as a result of the mandatory stay. *See* Complaint at ¶ 56. Under New Jersey law, "a cause of action founded upon negligence involves a breach of a duty of care that causes injury." *Weinberg v. Dinger*, 106 N.J. 469, 484 (1987). Thus, "to support a claim of negligence, New Jersey law requires first that there be a duty to act." *Sinclair v. Dunagan*, 905 F. Supp. 208, 213 (D.N.J. 1995). "A duty may be imposed by *statute*, by contract or relationship, or by the common law." *See Id.* at 213-14 (emphasis added).

In Counts III and IV, Plaintiff brings related claims alleging, respectively, intentional infliction of emotional distress and negligent infliction of emotional distress as a result of ICE's actions in unlawfully deporting Plaintiff. To establish a claim for intentional infliction of emotional distress in New Jersey, "the plaintiff must establish intentional and outrageous

conduct by the defendant, proximate cause, and distress that is severe." *Buckley v. Trenton Saving Fund Soc'y*, 111 N.J. 355, 366 (1988).  Additionally, whether a defendant has authority in his or her relationship with a plaintiff is relevant in claims for intentional infliction of emotional distress.  *See Taylor v. Metzger*, 152 N.J. 490, 511-13 (1998).  Similarly, "[t]he analysis of direct claims of negligent infliction of emotional distress 'involves traditional concepts of duty, breach and causation' and 'determining defendant's negligence depends on whether defendant owed a duty of care to the plaintiff, which is analyzed in terms of foreseeability.'"  *Sporn v. Ocean Colony Condo. Ass'n*, 173 F. Supp. 2d 244, 254 (D.N.J. 2001) (quoting *Williamson v. Waldman,* 150 N.J. 232, 239 (1997)).  To reiterate, the Court's inquiry is limited to whether there is a private analogue for these torts under New Jersey law, and, as a result, the Court need not decide whether Plaintiff satisfies the elements of these independent torts at this time.  Thus, my analysis is restricted to whether, under New Jersey law, a similar duty exists where private citizens would be liable under these claims for disregarding a statutory requirement.  I answer that question in the affirmative.

Here, the proper analogy is to a private person, who, while in a supervisory capacity over another person, violates a statutorily imposed duty.  In such a case, the injured party may have claims for negligence, intentional infliction of emotional distress, or negligent infliction of emotional distress under New Jersey law.  *See M.K. ex rel. D.K. v. Hillsdale Bd. of Educ.*, No. 06-1438, 2006 WL 2067177, at *2-3 (D.N.J. July 20, 2006) (ruling a plaintiff may have negligence and negligent infliction of emotional distress claims where defendants violated a New Jersey statute prohibiting abuse or neglect of a child); *Webb v. Betta*, 7 N.J. Super. 60, 62 (App. Div. 1950) (holding landlord's failure to maintain tenement house violated statute and provided tenant with an action for negligence); *49 Prospect Street Tenants Ass'n v. Sheva Gardens, Inc.*,

227 N.J. Super. 449, 471, 475 (App. Div. 1988) (ruling that conduct of landlord in breaching Consumer Fraud Act and warrant of habitability provided tenants with a claim for intentional infliction of emotional distress).

More specifically, the ICE agents in this case owed Plaintiff a duty of care.  *See Ramirez v. United States*, 998 F. Supp. 425, 435 (D.N.J. 1998) (ruling INS "agents owed Plaintiff a duty to act with reasonable level of care . . . .").  In that regard, the Government does not dispute that 8 C.F.R. § 1003.23(b)(4)(iii)(C) imposed a duty on ICE agents to stay Plaintiff's deportation, and that this duty was violated when ICE improperly deported Plaintiff.  *See* Defs.' Mem. at 1. Whether ICE may have negligently or intentionally breached that duty by deporting Plaintiff in violation of the mandatory stay is not relevant here.  Rather, this Court simply finds that a private analogue exists under New Jersey law for these claims.  Indeed, as I have just delineated, there are similar statutory duties imposed on private actors in their relationships with others under New Jersey law to the one between Plaintiff and the ICE agents in this case.  Accordingly, Plaintiff's negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress FTCA claims will be allowed to proceed.

### C.      Malicious Prosecution and Malicious Use of Process

In Count V, Plaintiff alleges malicious prosecution, and, alternatively, malicious use of process.  *See* Complaint at ¶ 69.  Specifically, Plaintiff argues that the Government instituted a separate proceeding against him when ICE agents effectuated his deportation in violation of the mandatory stay.  *See Id.* at  ¶ 70.  Under New Jersey law, a plaintiff must prove four elements to succeed in a malicious prosecution claim: (1) a criminal action was instituted by this defendant against this plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; and (4) the action was terminated favorably to the plaintiff.

*LoBiondo v. Schwartz*, 199 N.J. 62, 90 (2009).  Similarly, "[i]n order to establish a claim for malicious use of process [in New Jersey], the civil equivalent of a malicious prosecution claim, a plaintiff must satisfy five elements: (1) defendant instituted the civil action against the plaintiff; (2) defendant was motivated by malice; (3) defendant lacked probable cause; (4) the civil action terminated favorably to the plaintiff; and (5) plaintiff suffered a special grievance." *Green v. Green*, 899 F. Supp. 2d 291, 301 (D.N.J. 2012) (citing *LoBiondo*, 199 N.J. at 90).  "In a typical civil case, suit is instituted by filing a complaint and issuance of a summons."  N.J.S.A. 4:2-2, 4:4.  *Klesh v. Coddington*, 295 N.J. Super. 51, 58, (Ch. Div. 1996) *aff'd and remanded*, 295 N.J. Super. 1, 684 (App. Div. 1996).

Plaintiff's claims of malicious prosecution and malicious use of process both fail because ICE's deportation of Plaintiff is not analogous to instituting a criminal or civil proceeding against him.[5]  Deportation proceedings are civil in nature; thus, Plaintiff's attempt to characterize ICE's action in deporting him as instituting a criminal action is misplaced.  *See, e.g., I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984) (explaining that deportation proceedings are of a "civil nature" because "[t]he judge's sole power is to order deportation; the judge cannot adjudicate guilt or punish the respondent . . . .").  As a result, Plaintiff fails to establish the existence of a private analogue for his malicious prosecution claim under New Jersey law.  Additionally, Plaintiff's malicious use of process claim fails because it would defy logic for this Court to find that the act of deportation is analogous to instituting a civil action in New Jersey.  Although

---

[5] Neither can Plaintiff allege that ICE maliciously instituted his original deportation proceeding as the basis for his claim.  The Court notes that Plaintiff's deportation proceedings are currently pending as a result of the BIA's decision to reopen his case on September 23, 2011.  *See* Complaint at ¶¶ 37-38.  As a result, Plaintiff's deportation proceedings were never favorably terminated as required for either a malicious prosecution or a malicious use of process claim to proceed.

deportation proceedings are civil in nature, the ICE agents in this case deported Plaintiff – albeit improperly – pursuant to a deportation order entered in *absentia*.  In other words, the act of deportation was not a separate proceeding, as suggested by Plaintiff.  In fact, the deportation was in connection with the removal order.   Accordingly, the Court does not find the act of deportation in this case comparable to instituting a civil action in New Jersey, and Count V of Plaintiff's Complaint is dismissed for lack of a private analogue.

<u>**CONCLUSION**</u>

For the aforementioned reasons, Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction is **GRANTED** in part and **DENIED** in part as follows: Counts I and V are **DISMISSED**; Defendants' Motion to Dismiss Counts II, III, and IV is **DENIED**.

An appropriate Order shall follow.

Dated : <u>July 16, 2014</u>               <u>/s/ Freda L. Wolfson    </u>
                                            Hon. Freda L. Wolfson
                                            United States District Judge